## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**MARK A. COPANZZI,**
**1719 Fletchers Drive**
**Point of Rocks, MD 21777**

      **Plaintiff,**

   **v.**

**CHAD F. WOLF, ACTING SECRETARY,**
**U.S. DEPARTMENT OF HOMELAND**
**SECURITY**
**2707 Martin Luther King Jr. Ave., S.E.**
**Washington, DC 20528-0525**

**Service Agent:**
   **Office of General Counsel,**
   **United States Department**
   **of Homeland Security,**
   **Washington, DC 20528**

      **Defendant.**

**Civ. No. _____**

**Jury Trial Demand**

## COMPLAINT AND JURY DEMAND

COMES NOW, the Plaintiff, Mark A. Copanzzi, by and through counsel, Jay P. Holland

and the law firm of Joseph, Greenwald & Laake, P.A., and brings this Complaint seeking Judgment

against the U.S. Department of Homeland Security, United States Secret Service ("Defendant" or

"Agency"), pursuant to the Age Discrimination in Employment Act ("ADEA"), for employment

discrimination based upon age and retaliation for engaging in protected activity.

## JURISDICTION & VENUE

1.    This Court has jurisdiction of Plaintiff's claims herein pursuant to 28 U.S.C. §§

1331, 1343(a)(4).

2.      Venue herein is proper under 28 U.S.C. § 1391 (b) and (c), and Defendant maintains its principal office and employment records within this judicial district and within the jurisdictional boundaries of the District of Columbia.

3.      As alleged herein, all conditions precedent to the institution of this lawsuit have been performed or have occurred.

## PARTIES

4.      Plaintiff is a sixty-three (63) year old adult resident of the State of Maryland, residing at 1719 Fletchers Drive, Point of Rocks, MD 21777, and a former Assistant Director ("AD") of Technical Development and Mission Support for the U.S. Secret Service ("Secret Service").  Plaintiff was constructively removed from the Secret Service based upon his age, and retaliated against for complaining about age discrimination.

5.      Defendant is a federal law enforcement agency under the Department of Homeland Security charged with conducting investigations and protecting the nation's leaders and past leaders.  Defendant maintains its principal office at 950 H Street, NW, #7800, Washington, DC 20223.

6.      Defendant is a "person" within the meaning of 29 U.S.C. § 630(a), and an "employer" within the meaning of 29 U.S.C. § 630(b). Defendant hired Plaintiff as an employee and is subject to the laws preventing age discrimination in employment, as set forth more fully in the Counts that follow.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.      For those counts that so require, all administrative requirements to filing this lawsuit have been satisfied: to wit, Plaintiff filed a formal administrative complaint based on age discrimination with the Agency's Equal Employment Opportunity ("EEO") on April 17, 2015.

And on May 20, 2015, Plaintiff amended his formal complaint to include a reprisal claim after he received a retaliatory SF-52 based on his EEO protected activity.  The EEO investigated Plaintiff's claims from about May 27, 2015 until about September 22, 2015, and issued its Report of Investigation ("ROI") on about November 17, 2015.  Then on December 8, 2015, Plaintiff elected to proceed with a Hearing before the Equal Employment Opportunity Commission's ("EEOC") Administrative Judge.  The EEOC assigned the case to an Administrative Judge on September 22, 2016.  The parties completed limited discovery, and the Agency moved for summary judgment on March 24, 2017.  On August 16, 2018, the Administrative Judge denied the Agency's motion, setting the matter for a Settlement Conference and a Hearing.  Following an unsuccessful Settlement Conference, Plaintiff requested a Final Agency Decision ("FAD") on December 3, 2018.  A FAD was issued on March 30, 2020, giving Plaintiff ninety (90) days to file a Complaint in the appropriate United States District Court.  Plaintiff timely filed the instant Complaint on or before June 30, 2020.

## FACTS

8.     At the time of Plaintiff's removal from the Secret Service, he was fifty-seven (57) years of age, and a Senior Executive Service ("SES") 1811, Assistant Director of Technical Development and Mission Support for the Secret Service.

9.     Plaintiff had a long and distinguished career with the Secret Service that spanned almost thirty-three (33) years.

10.     Plaintiff began his career in 1982 when he started working for the Secret Service's Uniformed Division.  Following Plaintiff's Criminal Investigator and Secret Service training at the Federal Law Enforcement Training Center ("FLETC"), he served as a Special Agent at the Washington Field Office ("WFO").

11.     Subsequently, Plaintiff, having developed a reputation as a stellar performer with great attention to detail, completed stints in the Newark Field Office in about 1994, and in the Investigative Support Division at the Secret Service Headquarters in about 1996.

12.     Due to Plaintiff's reputation and performance, the Secret Service recruited him to train other agents at the Rowley Training Center ("RTC").  At RTC, Plaintiff served as a Lead Instructor and Program Manager for Use of Force training, which included Protective and Control Tactics, as well as Firearms and Defensive Measures.  At RTC, Plaintiff ultimately became the Assistant to the Special Agent in Charge ("ASAIC").

13.     In or about 2006, Plaintiff earned the position of Special Agent in Charge ("SAIC") of the Information Resources Management Division ("IRMD").  Plaintiff remained at IRMD for almost eight years, and later achieved the Senior Executive Service ("SES") level/grade.

14.     In or about 2012, Plaintiff began working as the Deputy Assistant Director of the Office of Protective Research, which would later become known as Technical Development and Mission Support ("TEC").  And in or about August 2014, Plaintiff became the AD of TEC, the last position he would hold with the Secret Service.

15.     Most laudably, during his Secret Service career, Plaintiff served on the Vice Presidential Protective Detail, protecting Vice President Dan Quayle, and on the Presidential Protective Detail, protecting President Bill Clinton.

16.     Throughout Plaintiff's distinguished career with the Secret Service, he never had a negative performance appraisal, as he always achieved or exceeded expectations.  His stellar career has been decorated with commendations and bonus awards for contributions and performance.

17.     Starting in about August 2014, as the AD of TEC, Plaintiff managed, coordinated and implemented operations and programs associated with communications and information

systems technology, protective intelligence research/investigations, and technical security support activities.  In that role, Plaintiff served as the principal staff advisor, coordinator and administrator responsible for planning, directing and evaluating TEC programs and operations.

18.   Shortly after Plaintiff became the AD of TEC, Joseph Clancy ("Clancy"), in about October 2014, became the Acting Director of the Secret Service, and Plaintiff's second line supervisor.  Plaintiff's first line supervisor remained Deputy Director, Alvin.T. Smith.

19.   On or about November 3, 2014, at the request of Clancy, Plaintiff attended a briefing to update Clancy about the projects and programs within the TEC directorate.  During this meeting, while Plaintiff presented the programs and projects in his division, Clancy interrupted and asked the following questions: "What is your age?"; "Are you under the Metropolitan Retirement System?"; "Are you eligible to retire?"; "What are your plans moving forward?"; and "Are you friends with Assistant Directors Paul Morrissey ["Morrissey"], Jane Murphy ["Murphy"], and Dale Pupillo ["Pupillo"].  ADs Morrissey, Murphy and Pupillo were among the oldest employees in the Secret Service, and the only four SES eligible retirees under the DC Police Officers and Firefighters Retirement Plan, more commonly referred to as the Metropolitan Retirement System[1], the retirement system used by the longest tenured employees.

20.   In response to Clancy's questions, Plaintiff answered that he was 57 years old and that he planned to continue working for a few more years in order to see his programs come to fruition.  Plaintiff informed Clancy that he became an AD only six (6) weeks earlier in about August 2014.

21.   During the November 3 meeting, Clancy seemed uninterested in Plaintiff's projects/programs, and seemed more interested in Plaintiff's age, retirement status and his

---

[1]  Employees hired after 1987 are part of the FERS Retirement System, not the Metropolitan Retirement System.

association with other older ADs.  This meeting demonstrated Clancy's plan, as early as November 2014, to remove older SES ADs from the Secret Service.

22.     Not long thereafter, on or about January 13, 2015, Clancy carried out his plan to terminate Plaintiff's employment as the AD of TEC, a position Plaintiff held for only five (5) months.

23.     During that January 13, 2015 meeting, Clancy reasoned that he needed to give "guys with a fresh perspective a chance."  Clancy then told Plaintiff that Plaintiff could retire, resign or be transferred to another agency, and that Plaintiff had one (1) day to decide.

24.     The following day, on or about January 14, 2015, Plaintiff again met with Clancy. At that meeting, Plaintiff said that he should have noticed Clancy's efforts to remove Plaintiff because of the November 2014 meeting when Clancy kept asking about Plaintiff's age and retirement.  Plaintiff also explained to Clancy that he brought a fresh perspective because he had only recently been appointed AD, and had been working on numerous programs and projects of value.

25.     In response, Clancy said that he "wanted to give younger guys a chance," and that "it was their turn [referring again to 'younger guys']."  Clancy also stated that he "'thought 'metro' guys could stay home retired and make just as much money," and asked again if Plaintiff was covered under the Metropolitan Retirement System.  Clancy further explained that he wanted to carry out Plaintiff's termination from the Secret Service earlier, but waited until the "Blue Ribbon Panel" recommendations.

26.     Clancy's rationale for removal seemed illogical.  The Blue Ribbon Panel ("Panel") had been set up shortly after the events of September 19, 2014, when a lone individual leapt over the White House fence, onto the North Lawn, and ultimately made it into the White House itself.

The Panel was tasked with providing a broader review of the Secret Service's protection of the White House compound and making recommendations.  The Panel, however, did not recommend Plaintiff's removal, nor did it specify Plaintiff's performance as it pertains to White House security matters.

27.    In the January 14 meeting, Plaintiff told Clancy that the Panel could not have influenced Clancy's decision because it did not form until November 15, 2014, after Clancy met Plaintiff and asked Plaintiff about his age and retirement status.

28.    At this point during the January 14 meeting, Clancy became agitated, did not respond to Plaintiff, and simply noted that his mind was made up.  Clancy then demanded a decision from Plaintiff, stating that Plaintiff could be transferred outside of the Secret Service, or could opt to retire.  When Plaintiff responded that any removal to another agency could not be labeled a transfer, and would have to be a Temporary Duty Assignment ("TDY"), Clancy replied, "whatever, you're not coming back!"

29.    That day, Clancy forced Plaintiff to agree to a reassignment. Plaintiff became devastated and told Clancy that he wanted to leave with his remaining dignity intact.  At that time, Clancy did not provide details concerning Plaintiff's removal from the Secret Service and reassignment to a different agency.

30.    It became evident that Plaintiff's distinguished career of almost 33 years would end ignominiously because of false statements and discriminatory actions by Clancy, who had never served as a Government Executive on the Director's Executive Staff, and who was using Plaintiff's age as a reason to remove him from the AD position.

31.    Clancy ultimately replaced Plaintiff as the AD of TEC with Joseph DiPietro, who was forty-four (44) years of age at that time.

32.     Clancy's actions demonstrate discrimination based on age because Clancy only removed four of the oldest SES employees, out of among twenty-five (25) SES employees assigned to Washington D.C. These four ADs (Plaintiff, Morrissey, Murphy and Pupillo) were the senior most SES employees, and the only Metropolitan System retirees.  They were all in their mid/late 50s or early 60s.  And Clancy replaced each of them with someone younger.

33.     Furthermore, the removal action against Plaintiff taken by Clancy is inconsistent with Title 5 C.F.R. § 317.901, further evidencing discrimination, as the action was without basis.

34.     The Agency's discriminatory removal devastated Plaintiff. Clancy attacked and damaged Plaintiff's character, reputation, and integrity, which Plaintiff had built over three decades of unimpeachable service.  Clancy's removal action will continue to adversely impact Plaintiff's career because every media outlet in the United States reported Clancy's decision.

35.     On or about February 25, 2015, Plaintiff engaged in protected activity when he initiated a complaint alleging that he was discriminated against based on age when on January 13 and 14, 2015, Clancy removed Plaintiff from his AD position and forced a reassignment upon Plaintiff.

36.     Clancy ultimately arranged for Plaintiff to be transferred to Customs and Border Protection ("CBP"). This humiliating reassignment was discriminatory and involved false information concerning Plaintiff.

37.     Following the Agency's informal investigation into Plaintiff's allegations of discrimination, on or about April 17, 2015, Plaintiff again engaged in protected activity when he timely filed his formal complaint of discrimination.

38.     Subsequently, on or about April 29, 2015, while Plaintiff was serving as CBP's Acting Director of Advanced Training and Distance Learning, the Agency issued Plaintiff a SF-52 noting a new change in title.

39.     Although Plaintiff had been serving as Acting Director within CBP, his title had still been AD for TEC.  The April 29, 2015 SF-52, however, noted that, officially, Plaintiff would no longer be considered an AD, and would now be demoted to Deputy Assistant Director for TEC.

40.     This subsequent demotion, that followed Plaintiff's protected activities on February 25, 2015 and April 17, 2015, had never been discussed during the January 13 and 14, 2015 meetings with Clancy.

41.     The demotion that Plaintiff endured, from Assistant Director to Deputy Assistant Director ("DAD"), as processed through the April 29, 2015 SF-52, remains an adverse change in status and title, as well as in job duties.  The demotion status and title reduction also affected Plaintiff's effective work standing and future opportunities.  The demotion to DAD ensured that Plaintiff would not be able to retire as an Assistant Director for the Secret Service.  Plaintiff would be denied a retirement plaque of commission books that was customarily given to all retiring ADs.

42.     In fact, Clancy even stated that the issue of demotion was "a legitimate question for [Plaintiff] to ask."  Clancy has since admitted that he had knowledge of Plaintiff's EEO complaints in "late February 2015," not long before Clancy signed and issued Plaintiff's SF-52 demotion.

## COUNT I

### Discrimination Based on Age in Violation of the
### Age Discrimination in Employment Act of 1967
### 29 U.S.C. § 623(a)(1)

43.     Plaintiff adopts and incorporates each and every allegation contained in each of the foregoing paragraphs as fully restated herein.

44.     By virtue of the acts described above, Defendant, by and through its employees, denied Plaintiff his employment rights, as guaranteed by the ADEA, when it discriminated against him by removing him from his AD position on the basis of his age.

45.     Defendant stated that it was looking to hire younger employees, and inquired about Plaintiff's age and retirement status prior to its removal action.

46.     Defendant subjected Plaintiff to the aforementioned employment actions/conditions based on his age – and subjected him to said conditions when those outside of Plaintiff's protected category were treated more favorably in their employment, and were not removed from their positions.   Moreover, Defendant replaced Plaintiff with an employee significantly younger than Plaintiff.

47.     As a direct and proximate result of the discriminatory acts and conduct of Defendant, Plaintiff has been caused to and did suffer, and continues to suffer emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort, anxiety, and economic losses.  Plaintiff will continue to suffer damages in the future, and is entitled to the rights and remedies at law provided by the ADEA, 29 U.S.C. § 216(b), including actual damages, liquidated damages and attorneys' fees.

### COUNT II

**Reprisal Based on Protected Activity in Violation of the
Age Discrimination in Employment Act of 1967
29 U.S.C. § 623(d)**

48.     Plaintiff adopts and incorporates each and every allegation contained in each of the foregoing paragraphs as fully restated herein.

49.     By virtue of the acts described above, Defendant, by and through its employees, committed unfair employment practices when it engaged in reprisal against Plaintiff for his efforts to oppose practices prohibited by the ADEA.

50.     Plaintiff complained informally and formally against the Agency and Clancy. Clancy learned of Plaintiff's complaints and issued an SF-52 further demoting Plaintiff in title, status and job duties, in addition to denying him a retirement plaque.  Plaintiff was subjected to the aforementioned adverse action based on his protected activities – and was subjected to said conditions when those who did not engage in protected activities were treated more favorably in their employment.

51.     As a direct and proximate result of the discriminatory acts and conduct of Defendant, Plaintiff has been caused to and did suffer, and continues to suffer emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort, anxiety, and economic losses.  Plaintiff will continue to suffer damages in the future, and is entitled to the rights and remedies at law provided by the ADEA, 29 U.S.C. § 216(b), including actual damages, liquidated damages and attorneys' fees.

WHEREFORE, for the all of the foregoing reasons, Plaintiff respectfully requests that an Order of Judgment be entered against the Defendant on all Counts and that full back pay and front pay be awarded, actual damages be awarded, liquidated damages be awarded, along with attorneys' fees and costs.  Plaintiff also requests that Defendant be enjoined from further acts of discrimination/retaliation in employment as contrary to federal law.  Further, Plaintiff demands judgment against Defendant for punitive damages, plus interest, and any other additional relief as the nature of the case may require, and which this Honorable Court shall deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues of triable fact in the foregoing complaint.

DATE:  June 25, 2020

Respectfully submitted,

JOSEPH, GREENWALD & LAAKE, P.A.

/s/    Jay P. Holland
Jay P. Holland, Esq. (Bar No. 422258)
JOSEPH, GREENWALD & LAAKE, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
301.220.2200 (T)
301.220.1214 (F)
jholland@jgllaw.com
*Counsel for Plaintiff*